In this case, there is basically one issue, and that one issue is whether the district court clearly erred in enhancing the offense level by two levels based on sophisticated means. Although there is one issue, there are two arguments that address that one issue. The two arguments deal with looking first at the specific conduct of Mr. Niko and whether his individual conduct was sufficiently intricate, sufficiently complex to warrant the sophisticated means enhancement. The second argument is even if his specific conduct was not sufficient to warrant the enhancement because what he did was not complex or intricate as called for in the guidelines, that nevertheless, because the entire offense conduct, that is, the conduct of all of the other co-defendants in the case, if that was sufficiently complex and intricate to warrant the enhancement, whether that two-level offense level was sufficient to warrant the enhancement, that is, the two-level offense level was not sufficient to warrant the enhancement. The two-level enhancement should be applied to Mr. Niko. So what do you think? So there's two ways to get him. Yes. Okay. Which is the stronger way to get him? I do not. What is your stronger argument? Which one do you think is your strongest argument? My strongest argument is that he did not take any individual steps to warrant the enhancement. His, this case is very fact-driven. Okay. But what about, okay. Did, all right, he set up this account, DBA Niko Tax Service. Was that necessary to carry out his part in this conspiracy? I believe that it was. And the reason for that is because someone else was presenting the false returns to IRS, sending them electronically. That was the individual referred to as KMS. Someone else had set up the scheme. Someone else had made arrangements to have the fraudulent checks sent to an account. There were actually three accounts that were set up. My client, Mr. Niko's, was one account. There were two other accounts. So even if Mr. Niko had not set up an account, he still would have gotten his kickback amount, right? I do not believe so, Your Honor, because ---- Well, but, okay, but he pled guilty. And that, and he, they can show that he got like $107,000 or something, right? He received $104,000 into his account. That doesn't mean he received $104,000. But the $104,000 that went into his account were fraudulent funds that were sent there by IRS. And my position is in order to carry out this crime, it had to say doing business as tax services. Otherwise, it would have ---- He could still be guilty of the conspiracy. He could have pled guilty to the conspiracy if the money had gone to someone else's account, but there would have been no reason for the money to go into someone else's account and then be transferred into his account. The whole idea was Mr. Niko and the two other individuals opened up the accounts to receive the fraudulent funds, and then those three individuals were going to keep a portion of the funds, and the majority of the funds were going to be sent to the number one defendant, who was Marshall. So if the money is being sent to the other two individuals, there's no reason for those two individuals to send Mr. Niko any money. His participation ---- And I don't think that's true. He could have been guilty of this crime in any other number of ways. Well, there are a number of ways that he could have been guilty, but he didn't take any other action to make him guilty. The only actions that he took in this conspiracy was that one action, which is to open up the account, and then I suppose you could say there were multiple actions in the sense that he did withdraw money several times from those accounts, but it was the same repetitive action, take out the money to provide to Marshall. So ---- But it's not the same situation as, say, like you get people that you get low-level people that steal mail from, you know, and then give it to someone else, and then the masterminds then decide, and then they give them credit cards and just say, okay, go buy things. This is more sophisticated than that. Would you concede that, than just taking mail out of a mailbox and then going and just using a credit card? This is a little more sophisticated. I do not believe that Mr. Niko's conduct is more sophisticated than stealing mail. Stealing mail, the individual basically ---- Okay. So is the scheme more sophisticated than that scheme? The scheme would be, I believe, the same if you take it all into consideration In other words, if you only compare stealing mail from mailboxes to the scheme in this case, yes, absolutely, the scheme ---- All right. If the scheme is more sophisticated than that, then I got you on your client then too, right? That there's two ways to get your client. That is correct. And the second argument as to that the government proffered in terms of why the sophisticated enhancement applied is because the entire scheme, the government argued, is complex and intricate. It is more complex than necessary, which is what Your Honor is indicating. And while that may be true, I am not in a position to say that it is or is not, but while that may be true, it does not apply, it does not warrant the sophisticated means enhancement as to my client because of his conduct. Well, let me just take you one step further. Let's just assume that the district court erred by applying that, but he still received a below-guideline sentence. So why isn't any error harmless? I do not believe that he received a below-guideline sentence. The court basically found that the offense level was computed, that the parties had computed it under 2B and the court felt it should be under 2T, which is what the probation officer had recommended. My argument before the district court was that it would have been, should be computed under 2B given the facts. The court did not agree with me, but ended up indicating that she would be following the computation under 2B because that's what the parties had agreed to. Had the ---- So are you alleging that error here? I believe it is error. I did not ----  Are you alleging that error? Is that before us? No, it is not before this court, and the reason I did not argue that is because I looked at what the judge had ultimately done, which is leave the offense level as computed under 2B. So given that your client pled guilty to a conspiracy count, why shouldn't we look at the scheme as a whole? I think that under 1B.1.3, the relevant conduct principles, there is ---- it is still necessary to look at what the defendant did in a particular conspiracy. It would make no sense not to look at the particular facts. For example, the example that was given to me earlier, and that is someone steals mail, and that's all they do. Then with that, if that person who stole the mail then gives the mail to someone else who washes the checks, who then orders things online, and it becomes more and more complicated and intricate, and that money is sent to offshore accounts, and there are multiple false documents, then that becomes an offense that is complex and sophisticated means will apply. But does that apply to the person who stole the mail as well? And I think that the answer has to be no, that you still have to look at the conduct of the particular defendant. Doesn't it depend what charge he pled to? Does that make any difference? Whether it's conspiracy or ---- I do not believe so because most times or oftentimes like in this case, an individual is only charged in the conspiracy. But we still have to look at what portion of that conspiracy is attributed to the defendant. For example, in this case, even though he pled to the entire conspiracy and the conspiracy involved one and a quarter million dollars, he was not held responsible for one and a quarter million dollars. He was held responsible for $104,000. The relevant conduct of the entire case was not attributed to him for purposes of the calculations of the guidelines. And just like that, the one and a quarter million was not attributed to him, I think the same applies with the sophisticated means. While ---- Before you end, could you just tell us how you distinguish Jennings? Yes. In Jennings, excuse me, that was a case where the defendants were purporting to have the special software that they could separate the oil from the dirt without hazardous waste. And what they did is they set up two accounts besides their own. The company was ESS. They set up an Ecologic with a hyphen account for a vendor who was going to apply the software. And then they set up a second account called Ecologic without a hyphen. And the intent of the defendants in that case was to basically put the same amount of money in both accounts to mislead the investors who had invested $60 million. And of course, not letting anyone know that they were putting in, they put in two and a half million in each of the accounts. So they were mimicking the two different accounts in order to be able to withdraw the software personal funds from one. The difference between that action and those facts in this are basically we have the defendants opening up accounts not in their own names. They opened it up in the name of Ecologic. Now, one of those defendants, Jennings, did use his name and true Social Security number to open up the account, but that is not what appeared in terms of the name of the account. So anyone looking at the account name Ecologic would be misled into thinking that it was Ecologic, the vendor, not a pseudonym for Jennings. But wasn't the whole point of this, too, in opening the bank accounts in the DBA tax return service, to make the government think that the check had been deposited into someone who had actually performed services on behalf of clients so that the money was going to the right person? I believe that that was the purpose of indicating DBA tax services. And my position is that is the lowest form of committing this particular crime, which was tax fraud. Wouldn't it have been better if he just put it in his own name? He still could be guilty of the crime if he put it in his own name. And what Judge Ward was saying is this makes it look like a tax service. That's different than just putting it in your own name. I understand that. My argument is that by putting it, he could have, the correct answer is yes, he could have put it under his own name. But by doing the DBA tax service, that was an intent to conceal where the checks were going to. And that, I believe, given a tax fraud situation, is the least, that the basic way of committing a tax fraud in this case. In any fraud case, there is deception. There are false statements. It's all a matter of degree. If you look, for example, at the case. I think I understand your argument. I'm not sure I agree with it, but I understand it. Thank you. Thank you. Thank you. May it please the Court, Carrie Curtis Axel for the United States. Good morning. Good morning. I thought perhaps I might begin by just addressing a couple points raised in defendant's case. And I read those cases in preparation for this argument and felt that, in general, we appreciate the continued guidance from this Court, published or not, in a sophisticated means, as to the sophisticated means enhancement. I found all of them very consistent, really, in terms of scope as this case. All of them involve coordinated conduct involving a complicated paper trail. And that's really what we're looking at here as well. They didn't address this question, the argument that we led with, the Jennings argument, which is, is a bank account in a fictitious name enough? That just wasn't the scope of those cases. Those were multifaceted schemes, as this is a multifaceted scheme. And I think that's a good argument. Defendant also pointed out that we didn't cite a case other than Gertler, which was outside the circuit, for the general principle that the 2B1.1B10 says on its own terms that the sophisticated means enhancement applies to the offense, not merely defendant's conduct. And I think it was helpful, albeit unpublished, this Court's recent decision in Sardariani, which looked to relevant conduct principles in that case to affirm the sophisticated means enhancement. And, indeed, as I read the limited explanation in Sardariani, that defendant's conduct was arguably less sophisticated than here. It was sort of a lulling as to one particular victim, whereas here we have an agreement, and focusing on Judge Wardlaw's point, we have an agreement this was a conspiracy offense. So defendant has admitted that he agreed with somebody else to commit a crime. That crime involved using stolen identity profiles, profiles that were obtained without authorization, to file tax returns, and that he would open up a bank account and take those fraudulent returns and route them back to the lead defendant. That's the scope of the agreement. So, at bare minimum, this Court, looking at what's mere foreseeability on the basis of defendant's admissions alone, that's what you have as mere foreseeability, that scope of conduct. Well, if he had not opened an account, could he still be guilty of the conspiracy? Yes, Your Honor. I mean, it depends on what his role was exactly. Of course, there are many people in this conspiracy. He could have opened a mail drop and had a false post office, and they could have received Treasury checks rather than electronic routing of Treasury money. That's one way in which co-conspirators receive money. Well, if he had opened an account in his name only, not as a tax service, would that be less sophisticated? Under Jennings, it certainly would be. I mean, if we're just looking, again, to whether or not the use of a fictitious business name, which is what a DBA is, is that alone enough to show that it was sophisticated? You know, it would not meet that standard if he just opened it in his own name. We would still say probably that he was part of this broader scheme, and we'd have to have other conversations about mere foreseeability. So is there any doubt that Nico knew where the money being deposited in his account came from? And given that he was receiving this tax return money intended for others in his account, were the actions of other conspirators reasonably foreseeable to him? Yes, Your Honor, and one of the things I submitted at sentencing was, in fact, the full bank statements, because it's not always the case in these cases, but it was here where you actually do see U.S. Treasury deposit and a blacked-out Social Security number with the last four digits. And each one of those deposits has a different last four digits. So putting together, of course, what he admitted as to the scope of his agreement, which is one of the relevant conduct tests under 1B1.3, what's the scope of the agreement he undertook, he agreed to undertake? And then coupled with the bank statements, it's confirmation that he knew these are different people's tax returns being deposited in his account, in his account under the name of Nico Tax Services. The bank records also show, Your Honor, that every time he makes a withdrawal, he signs a withdrawal slip that says Nico Tax Services when he shows up at the bank to make a withdrawal, and that is in the ER. What's your response to I asked a question about harmless error? What would be your response on that? If the district court erred, is this subject to harmless error? I tried to do the math, Your Honor. We didn't make a harmless error argument. I think the court shouldn't be troubled about the equities here. We didn't make one. I believe that the math comes out as under the 2T1.1 guidelines. It was a 16 before the application of sophisticated means. Probation recommended sophisticated means, so they recommended a much higher offense level. It would have been 18 before acceptance of responsibility, and then a 16. And that total offense level is higher than what the court came out at here, applying 2B1.1 in accordance with the party's agreement. But if the court had not applied for sophisticated means, the court would have come out at 16 minus 3. We would have still been at a 13. I'm curious as to what the government's position is as to which guidelines should be used. I mean, you obviously agreed to a plea agreement using the B guidelines, and then the probation office comes in with this T guidelines, which makes it a higher sentence. So in the future, what are you guys going to be advocating? It's interesting, Your Honor, because actually I think in most cases 2B1.1 would come out higher than 2T1.1. We did not seek a victim enhancement here, which would ordinarily apply, and defendants should have had a victim enhancement for every time there was a different social security number in his bank account. We didn't for equitable reasons, Your Honor, because this actually was an evolving area at the time. We agreed with the first defendant that it was 2B1.1, then probation raised that it was 2B1.1, and in order to make the subsequent defendants, for reasons that take too long, but in order to make it fair to the subsequent defendants, we actually agreed everybody was 2B1.1 and not to seek a victim enhancement. We were attempting to be equitable to what happened to defendant number one. The position of the Department of Justice is that 2B1.1 should apply, because this scheme is a lot like what's going on in other areas of criminal law these days with respect to stolen identity profiles and the ability of someone to sit at a computer and file false government forms. I have a student loan case that's very similar to this one. So the argument is these cases feel like what they call a stolen identity refund, or stolen identity return cases, SURF is the acronym. And so the Department of Justice's position is 2B1.1, but I think it's developing. I didn't find a lot of law as we put it in the brief on this subject. Thank you. And finally, Your Honor, I would just say that I believe defendant has conceded on the Jennings point that the name, in fact, was used to conceal. And I point out that banks are very important in the fraud detection arena as well. They have Reporting Act requirements, and so it is important when you go into a bank here where he used the NECO tax services, that was key to concealment. And I think that the sophisticated means enhancement looks to concealment, as I think the cases repeatedly say. Does the Court have any more questions for me? Thank you, Counselor. Thank you. Thank you. Just a few points. With respect to the new cases that were cited in my review. I think you need to ask the presiding judge you used all your points, if you have any time. Oh, I'm sorry. We'll give you a minute or so. I'm sorry, Your Honor? We'll give you a minute or so. Thank you. With respect to the new cases that I cited and that were, that was just argued by the government, in particular United States v. Horam, all the new cases coming from the circuit indicate very clearly that there has to be complex situations, complex and intricate. And so the main primary question here is the degree of sophistication. There are also several cases that I cited in my pleadings that talk about whether the bank, whether the accounts are open and whether it is something that someone looking at the accounts can make a determination. Someone, for example, like the government, can determine that there is fraud going on. And that was something that distinguishes Jennings from this case because in Jennings, the court made it a point to indicate that in Jennings, unless someone was on the inside and knew that to look for the, who set up the account versus what the account's name was, they would have never discovered the fraud or it would have been extremely impossible to do that. The Sardarani case, which the government cited for persuasive value, is much more egregious in the case herein. In that case, it was offshore banking. There were several fraudulent documents. There were forged signatures, cutting and pasting of notary false deeds, lolling going on. It was much more outrageous, but the primary point that I wanted to make in terms of that case is that the court, it found that the co-defendant was responsible because of relevant conduct. It was his brother who had set up the scheme, but he knew full well everything that was going on. He was the one engaged with the money, distributing the money, doing the lolling with the investors, with the banks, and that is something that didn't happen in this case. Mr. Niko was not aware of the entire scheme and there is no evidence that he was. Thank you. Thank you, counsel. The case, as argued, will be submitted.
judges: REINHARDT, WARDLAW, CALLAHAN